MANU-TRONICS, INC., Plaintiff-Appellant,†

v.

EFFECTIVE MANAGEMENT SYSTEMS, INC., a
domestic corporation, Michael D. Dunham, Thomas M.
Dykstra, Robert E. Weisenberg, Anthony J. Kalupa,
Roger K. Miller, Wayne Wedell, Robert Booth and
Thomas Drozdowicz, Defendants-Respondents.

Court of Appeals

*No. 90–1550. Submitted on briefs March 1, 1991.—Decided
May 8, 1991.*

(Also reported in 471 N.W.2d 263.)

†Petition to review denied.

On behalf of the plaintiff-appellant the cause was submitted on the brief of *John V. O'Connor* of *O'Connor & Williams, S.C.* of Kenosha.

On behalf of the defendants-respondents the cause was submitted on the brief of *Mary K. Braza* and *Bernard J. Bobber* of *Foley & Lardner* of Milwaukee.

Before Nettesheim, P.J., Scott and Anderson, JJ.

ANDERSON, J. The question raised in this appeal is whether an arbitration award, in favor of Effective Management Systems-Wisconsin, Inc. (EMS-Wisconsin) precludes Manu-Tronics, Inc. (Manu-Tronics) from proceeding with an action against the individual respondents, employees of EMS-Wisconsin and Effective Management Systems, Inc. (EMS), the parent corporation. Because we conclude that there is sufficient privity between all respondents and EMS-Wisconsin, and sufficient identity of causes of action and issues raised in this action and the arbitration proceeding, we affirm the trial court's order dismissing this action.

Manu-Tronics is a contract manufacturer of printed circuit boards and other electronic assemblies. In 1987, it entered into a series of contracts with EMS-Wisconsin to purchase computer hardware, peripherals and software to upgrade its computer system. Manu-Tronics rapidly became dissatisfied with EMS-Wisconsin and on March 16, 1988 commenced an action in Kenosha county circuit court alleging: (1) breach of contract, (2) intentional misrepresentation, (3) negligent misrepresentation, (4) strict responsibility, (5) false advertising,

and (6) negligence. *Manu-Tronics, Inc. v. Effective Management Sys.-Wis., Inc.*, No. 88–CV–487 (filed Mar. 16, 1988) *("Manu-Tronics I")*.

Pursuant to a contractual arbitration clause[1] and sec. 788.02, Stats., the action was stayed and Manu-Tronics filed a demand for arbitration with the American Arbitration Association (AAA). To describe the nature of the dispute between the parties and the relief sought, Manu-Tronics attached a copy of its complaint to the demand for arbitration. EMS-Wisconsin filed an answering statement denying Manu-Tronics' allegations and a counterclaim seeking the balance due under the contracts.

The arbitration proceedings were held between December 14, 1988 and September 14, 1989 and according to the AAA commercial arbitration rules. The proceedings included nineteen days of evidentiary hearings where sixteen witnesses were called and over 100 exhibits were introduced; the arbitrator allowed one full day for arguments and permitted the parties to file briefs. The arbitrator issued an award on October 17, 1989 in favor of EMS-Wisconsin on its counterclaim and required Manu-Tronics to pay the administrative costs of the arbitration and compensation for the arbitrator. The award provided: *"This Award is in full settlement of*

---

[1]The arbitration clause reads:

BUYER'S AND EMS'S REMEDIES

> Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof. In the event of arbitration, such arbitration shall take place in Milwaukee, Wisconsin.

308

*all claims submitted to this arbitration."* (Emphasis added.)

After the award was issued, Manu-Tronics and EMS-Wisconsin entered into a stipulation to dismiss *Manu-Tronics I.* The order of dismissal recited that all causes of action, whether pled or not, were dismissed upon their merits and with prejudice.[2]

During the course of the arbitration proceedings Manu-Tronics discovered that EMS-Wisconsin was a wholly-owned subsidiary of EMS and commenced this action *("Manu-Tronics II")* on April 5, 1989 in Kenosha county circuit court against EMS and the individual respondents. In *Manu-Tronics II* five causes of action were alleged: (1) intentional misrepresentation, (2) negligent misrepresentation, (3) strict liability, (4) false advertising, and (5) negligence. While negotiating the dismissal of *Manu-Tronics I,* Manu-Tronics specifically refused to include *Manu-Tronics II* in the stipulation.

EMS moved to dismiss *Manu-Tronics* on the doctrines of res judicata and collateral estoppel. EMS's motion was supported by affidavits of the named respondents and counsel. In opposition to the motion, Manu-Tronics filed the affidavit of its attorney.

The trial court treated EMS's motion as a motion for summary judgment pursuant to sec. 802.06(2), Stats., and granted EMS's motion to dismiss. The court found that the doctrine of res judicata barred any action against Robert Weisenberg, Anthony Kalupa, Roger Miller, Thomas Drozdowicz, Wayne Wedell and Robert Booth (collectively "employees") on the grounds that they were employees of EMS-Wisconsin and had participated fully in the arbitration proceedings. The court dismissed the action against Michael Dunham and Thomas

---

[2]Manu-Tronics never sought to vacate the award in circuit court for the reasons listed in sec. 788.10(1), Stats.

Dykstra after finding that neither of them had committed any acts entitling Manu-Tronics to relief. Finally, the court found that there was an identity of issues and parties during the arbitration and that either the doctrine of res judicata or of collateral estoppel barred any action against EMS.[3]

Manu-Tronics argues that the trial court erred in finding that there was a sufficient identity of parties and identity of claims and issues between *Manu-Tronics I* and *Manu-Tronics II* to warrant the operation of the preclusive doctrines of res judicata and collateral estoppel. We conclude that res judicata is available as a defense because the arbitration award disposed of all the claims pled in *Manu-Tronics II*. We further conclude that the employees are privies to EMS-Wisconsin and that EMS and EMS-Wisconsin are privies, therefore establishing identity of parties. Also, we conclude that collateral estoppel is an available defense because there is an identity of issues between those raised in *Manu-Tronics II* and the issues actually litigated in the arbitration proceedings.

In summary judgment cases we apply the same methodology as was used by the trial court. *S.J.D. v. Mentor Corp.,* 159 Wis. 2d 261, 265, 463 N.W.2d 873, 875 (Ct. App. 1990). The summary judgment rubric is well-known and oft-stated and will not be repeated here. *See Preloznik v. City of Madison,* 113 Wis. 2d 112, 116, 334 N.W.2d 580, 582-83 (Ct. App. 1983). Here, the pleadings and affidavits of the parties show a claim, a

---

[3]Although Manu-Tronics has appealed from the entire order of dismissal, it has not addressed the trial court's finding that neither Dunham nor Dykstra committed any act giving rise to a cause of action against them. Therefore, we affirm that part of the trial court's judgment without further discussion.

defense and the absence of any factual dispute.[4] Thus, there remains only an issue of law which we review *de novo* without deference to the trial court, although we do value the trial court's thoughtful and well-reasoned opinion.

The sensible policy of this state is to promote arbitration as a viable and valuable form of alternative dispute resolution. *See Richco Structures v. Parkside Village, Inc.*, 82 Wis. 2d 547, 553, 263 N.W.2d 204, 208 (1978). To aid in this promotion the appellate courts have held that arbitration awards are presumed to be valid. *Id.* Further, an arbitration award does not have to deal separately with each claim and counterclaim submitted to be a final resolution of all claims. *McKenzie v. Warmka*, 81 Wis. 2d 591, 600, 260 N.W.2d 752, 756–57 (1978). And where an award on its face makes clear that no issue was left unresolved, it is to be considered final and definite. *Scherrer Constr. Co. v. Burlington Memorial Hosp.*, 64 Wis. 2d 720, 736, 221 N.W.2d 855, 864 (1974).

Essential to arbitration remaining useful is the elementary principle that the doctrines of res judicata and collateral estoppel are applicable to arbitration awards. *Dehnart v. Waukesha Brewing Co.*, 21 Wis. 2d 583, 589, 124 N.W.2d 664, 667 (1963); *Restatement (Second) of Judgments* sec. 84 (1982). This principle does not apply if the award does not conform to the submission[5] and a

---

[4]EMS filed extensive evidentiary affidavits in support of its motion, while Manu-Tronics' affidavit in opposition fails to contradict any evidentiary facts submitted by EMS. Therefore, we will accept EMS's evidence as uncontradicted.

[5]The submission to the arbitrator may include more issues than those described in the demand for arbitration. The issues

decision by the arbitrator on any issue outside of the submission is not conclusive in subsequent litigation. *Dehnart,* 21 Wis. 2d at 592, 124 N.W.2d at 668–69.

■

The award in this case is succinct; it awards to EMS-Wisconsin a sum on its counterclaim and, on its face, it recites that it is in full settlement of all claims submitted. By its very brief nature, the award did not decide any claims or issues outside of the submission. Therefore, applying the principles that promote arbitration, we conclude that the award is conclusive as to all claims and issues submitted, expressly or by implication, to the arbitrator.

## RES JUDICATA

Many times, litigants, attorneys and the courts have confused the doctrines of res judicata and collateral estoppel. There are precise differences between the two doctrines that prevent them from being used interchangeably:

> [U]nder the doctrine of res judicata, a judgment "on the merits" in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, such a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit.

*Lawlor v. National Screen Serv. Corp.,* 349 U.S. 322, 326 (1955).

---

submitted to arbitration may also be determined by extrinsic evidence, the intent of the parties and manifest implication. *Putterman v. Schmidt,* 209 Wis. 442, 447, 245 N.W. 78, 80 (1932).

For the respondents to have the benefit of res judicata, therefore, there must be an identity of both the cause of action and the parties in *Manu-Tronics I* and *Manu-Tronics II*. Manu-Tronics argues that there is not an identity of a cause of action because *Manu-Tronics II* has pled in the alternative three forms of misrepresentation, alleging claims not alleged in *Manu-Tronics I*. Specifically, Manu-Tronics argues it has pled two new claims: (1) the corporate structure was misrepresented and (2) there was a misrepresentation that the software was tailored exclusively for Manu-Tronics.

We conclude there is an identity of the cause of action in *Manu-Tronics I* and *Manu-Tronics II*. Evidence of the alleged misrepresentation of the corporate structure, *i.e.*, the failure to disclose that EMS-Wisconsin was a wholly-owned subsidiary of EMS, was presented during the arbitration proceedings and was argued on the closing day of the proceedings. Although this claim was not explicitly included in Manu-Tronics' submission, it was implicitly tried at Manu-Tronics' behest when Manu-Tronics subpoenaed the president of EMS and examined him about the corporate relationship between EMS and EMS-Wisconsin; issued a *subpoena duces tecum* for all corporate records; and argued the claim before the arbitrator. *See Putterman v. Schmidt*, 209 Wis. 442, 447, 245 N.W. 78, 80 (1932). We are satisfied that nothing more needed to be done to submit this claim to the arbitrator.[6]

---

[6]Our conclusion would be the same under the "transactional view" of "cause of action," the rule applied in Wisconsin. *Juneau Square Corp. v. First Wis. Nat'l Bank*, 122 Wis. 2d 673, 682, 364 N.W.2d 164, 169 (Ct. App. 1985). Under that method of determining identity of a cause of action, the inquiry is whether all of the claims arise out of one transaction or factual situation. *Id.*

Manu-Tronics argues that misrepresentations that the software was tailored for its specialized needs is a new claim or issue, not included in *Manu-Tronics I*. This argument ignores broad factual allegations in *Manu-Tronics I* that EMS-Wisconsin "misrepresented and understated the costs of modifying or customizing standardized software so as to render it capable of meeting Plaintiff's specific needs," and that "the software Defendant would supply would be easily modified to meet Plaintiff's unique needs, and would be very functional." We conclude that there is an identity between these claims.

There also must be an identity of parties for res judicata to apply. In *Manu-Tronics II* it is alleged that the employees represented that they were either employed by, owned stock in, or acted as agent for EMS or EMS-Wisconsin. Uncontroverted affidavits of the employees establish that at all times they were employees of EMS-Wisconsin solely acting on behalf of their employer; that they were not employees of EMS; and that they did not have authority to act on behalf of EMS. These affidavits establish a classic employer-employee relationship in which EMS-Wisconsin is vicariously responsible for the conduct of its employees. *Landess v. Schmidt,* 115 Wis. 2d 186, 196, 340 N.W.2d 213, 218 (Ct. App. 1983).

*Manu-Tronics I* rested on the theory that EMS-Wisconsin's liability arose from the tortious acts of its employees who were not named in that action. The arbitration award found that EMS-Wisconsin did not breach its contract with Manu-Tronics, did not make any type of misrepresentation, did not perform its duties negligently and did not engage in false advertising. Under this scenario the arbitration award extinguishes any claims that were litigated or could have been litigated that

314

Manu-Tronics may have had against the EMS-Wisconsin employees. *See Landess,* 115 Wis. 2d at 196–97, 340 N.W.2d at 218. We conclude that there is an identity of parties between EMS-Wisconsin and its employees which permits the latter to assert the doctrine of res judicata as a defense to *Manu-Tronics II.*

We are also satisfied that there is an identity of parties between EMS-Wisconsin and EMS because they are in privity. "[T]he identity of parties requirement of *res judicata* is met where the two actions involve a closely-held corporation in one case [here, the arbitration proceedings] and its principal shareholder in the other *[Manu-Tronics II]." Jantzen v. Baker,* 131 Wis. 2d 507, 511, 388 N.W.2d 660, 662 (Ct. App. 1986), and the principal shareholder actively participated in the first case. *Restatement (Second) of Judgments* sec. 59(3)(a) (1982). Once again, the uncontroverted affidavit of EMS's president establishes that as sole shareholder, EMS supervised and conducted the arbitration proceedings on behalf of its wholly-owned subsidiary, EMS-Wisconsin.

██ The trial court properly concluded that there was an identity of claims between *Manu-Tronics I* and *Manu-Tronics II;* that the EMS-Wisconsin employees could properly raise the arbitration award as having extinguished any claim Manu-Tronics may have had against them individually; and that EMS-Wisconsin and EMS were in privity.[7]

---

[7]Having found an identity of parties, we note that Manu-Tronics' voluntary stipulation to dismiss on the merits and with prejudice *Manu-Tronics I* and all claims, whether pled or not, operates to preclude Manu-Tronics from proceeding with *Manu-Tronics II.*

The preclusive doctrine of collateral estoppel does not require an identity of parties if it is raised defensively to prevent Manu-Tronics from relitigating an issue or issues conclusively resolved against it in the arbitration proceedings. *See Kichefski v. American Family Mut. Ins. Co.,* 132 Wis. 2d 74, 79, 390 N.W.2d 76, 78 (Ct. App. 1986). It does require an identity of issues.[8] If the controlling facts and applicable legal rules remain unchanged there is an identity of issues which would permit the application of collateral estoppel. *Crowall v. Heritage Mut. Ins. Co.,* 118 Wis. 2d 120, 125–26, 346 N.W.2d 327, 331 (Ct. App. 1984). In contrast to res judicata, the issues must have been actually litigated in the first proceeding and not just be capable of litigation. *See Restatement (Second) of Judgments* sec. 27 (1982).

The commentary to the Restatement points out that the dimension of the issues litigated in the first proceeding is sometimes a difficult question. In this case there is no difficulty. The issues litigated in the arbitration proceeding clearly embrace the issues contested in *Manu-Tronics II.* There is nothing in the record to indicate that evidentiary fact, ultimate fact or the controlling law would change in *Manu-Tronics II.*

Finally:

> A major consideration . . . is fairness to the party against whom collateral estoppel is asserted. He "must be permitted to demonstrate, if he can, that he did not have 'a fair opportunity procedurally, sub-

---

[8]"An issue on which relitigation is foreclosed may be one of evidentiary fact, of 'ultimate fact' (i.e., the application of law to fact), or of law." *Restatement (Second) of Judgments* sec. 27, comment c at 253 (1982).

316

stantively and evidentially to pursue his claim the first time.' "

*Crowall,* 118 Wis. 2d at 126, 346 N.W.2d at 331 (citations omitted).[9] Manu-Tronics complains that it was denied a full and fair opportunity to present its case, but it has not made any evidentiary demonstration that it was denied a full and fair opportunity to present its case.

The record shows that Manu-Tronics filed the demand for arbitration; selected the issues to be submitted to arbitration; was permitted to call historical, expert and adverse witnesses; was permitted to introduce all relevant and material evidence; declined an offer by EMS-Wisconsin to participate in limited discovery; submitted a presubmission brief to the arbitrator; had adequate time to argue the evidence; and submitted a post-submission brief. Manu-Tronics cannot now complain that it was denied a fair and full opportunity to present its claims when it was given the same procedural and substantive rights it would have enjoyed in circuit court. *See Spearing v. County of Bayfield,* 133 Wis. 2d 165, 172, 394 N.W.2d 761, 764-65 (Ct. App. 1986).

*By the Court.*—Order affirmed.

[9]The doctrine of res judicata also has fairness as an essential principle. Res judicata may "never be applied in such a fashion as to deprive a party of the opportunity to have a full and fair determination of an issue." *Desotelle v. Continental Casualty Co.,* 136 Wis. 2d 13, 21-22, 400 N.W.2d 524, 527 (Ct. App. 1986).